# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| W & J HARLAN FARMS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:09-cv-113-WTL-TAB |
| CARGILL, INC., | ) |
| Defendant. | ) |

## ENTRY ON MOTION TO DISMISS, MOTION TO CONFIRM ARBITRATION, AND MOTION TO AMEND

Pending before the Court are four motions: (1) the Defendant's Motion to Dismiss (Docket No. 26); (2) the Defendant's Motion to Confirm Arbitration (Docket No. 28); (3) the Plaintiff's Motion to Vacate[1] Arbitration Award (Docket No. 38); and (4) the Plaintiff's Motion to Amend (Docket No. 37). These motions are fully briefed, and the Court, being duly advised, now rules as follows.

## I. LEGAL STANDARD

Section 10 of the Federal Arbitration Act permits a court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

---

[1] Although the Plaintiff did not caption this document as such, the Court will treat Docket No. 38, which is entitled "Plaintiff's Response to Defendant's Cross Application to Confirm Arbitration Award," as a motion to vacate the arbitration award.

In addition to the four reasons set forth in 9 U.S.C. § 10, a court may also "set aside arbitration awards that are in 'manifest disregard of the law.'" *Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 268 (7th Cir. 2006). However, the Seventh Circuit has "defined 'manifest disregard of the law' so narrowly that it fits comfortably under the first clause of the fourth statutory ground – 'where arbitrators exceeded their powers.'" *Id.* (citations omitted). Indeed, the Seventh Circuit has consistently "confined [manifest disregard of the law] to cases in which arbitrators 'direct the parties to violate the law.'" *Id*. at 269 (quoting *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001)).

The Seventh Circuit has also cautioned that "[i]t is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not." *Wise*, 450 F.3d at 269.

> When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that one of the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc. – conduct to which the parties did not consent when they included an arbitration clause in their contract.

*Id*.

Accordingly, "the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all." *Id*.; *see also Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987) (stating that "the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the abitrator or arbitrators erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.").

## II. BACKGROUND

Sometime before March 1, 2006, Cargill Inc. ("Cargill") began advertising its "On-Farm Storage" Program (the "Program") to Harlan Farms, Inc. ("Harlan Farms"). Cargill's advertisements stated that the Program provided the "chance to obtain a GSI grain storage system at significantly reduced cost." Docket No. 39 at 3. Cargill also promised "flexibility on delivery times." *Id*. Ultimately, the owners of Harlan Farms – Vernon K. Harlan and Dennis R. Harlan – met with Cargill to discuss the Program.

Cargill explained that in order to participate in the Program, Harlan Farms had to enter into an agreement to sell Cargill a specific amount of corn at set prices for three years, beginning in 2007 and ending in 2009. Cargill told Harlan Farms that if they agreed to the terms of the contract then Cargill would deliver the grain storage system at no charge.

Ultimately, Harlan Farms and Cargill entered into a "Cargill AgHorizons On-Farm Storage" Contract (the "Contract") on March 1, 2006. The Contract required Harlan Farms to deliver 45,000 bushels of corn to Cargill at $2.55 per bushel in 2007, 2008, and 2009. Harlan Farms satisfied its obligations to Cargill in 2007 and 2008 by making the required deliveries. However, in May and June of 2008, floods destroyed 2400 acres of Harlan Farms' corn. Harlan Farms informed Cargill of its flood-related losses and asked to postpone the 2009 delivery until 2010.

Cargill informed Harlan Farms that it charged a $1 per bushel carrying charge to carry the Contract over to 2010.[2] Harlan Farms was quite upset to learn about this policy, as it was

---

[2] Harlan Farms was unaware of the carrying charge provision. In fact, Harlan Farms believed that Cargill's policy was that in the event of an "'act of God,' which resulted in a crop failure," Cargill would "allow the farmer to roll the contract over into the next year, without

contrary to its expectations and beliefs. Cargill attempted to secure a commitment from Harlan Farms to either deliver the grain in 2009 or pay the carrying charge.

On June 18, 2008, Cargill sent Harlan Farms a letter stating that based on Harlan Farms' representations, Cargill was canceling the Contract as of the close of the grain market on June 18, 2008. Cargill demanded that Harlan Farms pay $238,050 in damages.

Harlan Farms responded by filing suit in this Court on February 3, 2009. Meanwhile, Cargill initiated arbitration through the National Grain and Feed Association (the "NGFA"). Cargill then moved to stay the proceedings in this Court, pending arbitration. On September 29, 2009, the Court granted Cargill's motion to stay and referred all of the parties' claims to arbitration.

The NGFA issued its decision on June 2, 2010. The arbitrators found in favor of Cargill and against Harlan Farms in all respects and awarded Cargill $238,050 in damages, plus interest. On August 19, 2010, Harlan Farms filed an Amended Complaint, which Cargill has now moved to dismiss. At the same time, Cargill moved to confirm the arbitration award. *See* Docket Nos. 26 & 28. Harlan Farms has filed a cross-motion to vacate the arbitration award. *See* Docket No. 38.

### III. DISCUSSION

Cargill claims that none of the grounds for vacating an arbitrator's decision apply. Thus, it argues, the arbitration decision should be confirmed. In contrast, Harlan Farms claims that the arbitration award should be vacated either pursuant to 9 U.S.C. § 10 or for manifest disregard of

---

additional charge or penalty." Amend. Compl. ¶ 9.

the law.³

### A. Failure to enter a final and definite award.

Harlan Farms claims that "the Arbitration Panel failed to find on Harlan's claims for fraud and fraudulent inducement." Docket No. 39 at 9. According to Harlan Farms, the NGFA arbitrators did not resolve all of the claims before them, therefore, the arbitration award is neither final nor definite. *See* 9 U.S.C. § 10(a)(4); *see also Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002) (stating that the purpose of § 10(a)(4) "is merely to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it.").

In this case, the arbitrators' decision states:

> The arbitrators determined that Harlan Farms' defenses relied upon many terms or conditions not incorporated in the original contract. For instance, Harlan Farms stated that it was told of an "Act of God" clause that would excuse non-delivery of one year's production in case of natural disaster if delivery of an equivalent quantity was made in the subsequent crop year. However, the arbitrators were unable to find these terms in the original signed contract.

Docket No. 21 Ex. 1 at 2.

> The arbitrators further concluded that the signed contract did not provide for an "Act of God" provision, and that Harlan Farms was obligated under the contract terms and NGFA Trade Rules, either to accept Cargill's offer to roll the contract forward to the next marketing year for a fee, or accept the cancellation of the contract. Consequently, the arbitrators declined any claim or award to Harlan

---

³ Harlan Farms also argues that in lieu of vacating and remanding the case to the NGFA arbitrators, this Court should resolve the fraud and fraudulent inducement claims. However, the entire case (including the fraud claims) was referred to arbitration. *See* Docket No. 15 (staying district court case and referring all claims to arbitration). The parties have thus agreed to arbitration and have opted out of the court system. *See Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 269 (7th Cir. 2006).

5

Farms in its counter claim for damages and fees.

*Id*. at 3.

However, Harlan Farms does not claim that the Contract contained an Act of God provision. Instead, Harlan Farms claims that Cargill orally represented that such a policy existed. According to Harlan Farms, based on this (allegedly fraudulent) representation, it was induced to enter into the Contract. Although the Court takes no position on the merits of Harlan Farms' fraud claim, based on a review of the arbitrators' decision, it is not clear whether they considered this claim, as their only reference to an "Act of God" clause is to note that such a clause was not in the original signed contract. *See* Docket No. 21 Ex. 1 at 2. However, Harlan Farms' fraud claim is not dependent on the existence of such a provision in the contract. Accordingly, the arbitrators' decision must be vacated pursuant to 9 U.S.C. § 10(a)(4) and the case remanded[4] to the arbitrators for either clarification of their decision regarding Harlan Farms' fraud claim or resolution of that claim in the first instance if, in fact, it was not considered in arriving at the original decision.

---

[4] Although the parties' submissions do not discuss the doctrine of *functus officio*, a brief mention of that doctrine is relevant. *Functus officio* "is Latin for 'office performed' and in the law of arbitration means that once an arbitrator has issued his final award he may not revise it." *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 845 (7th Cir. 1995). At first glance, the doctrine would seem to preclude vacating and remanding an arbitrator's award. However, the *functus officio* contains an exception that permits clarification or completion of an arbitral award. *See id*. at 847. This exception avoids judicial guessing about the meaning of an award and "serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991). Thus, remand to the arbitrator or arbitrators is not inconsistent with the *functus officio* doctrine.

B.  **Exceeding the scope of authority.**

Harlan Farms next argues that the arbitral award should be vacated because "[t]he Arbitration Panel exceeded the authority granted to it by determining the case in accordance with instructions in the Guidelines [for NGFA Arbitration Committee Members (the "Guidelines")]." Docket No. 39 at 15.  Harlan Farms alleges that the Guidelines "were not incorporated into the Arbitration Agreement or provided to Harlan [Farms] prior to the initiation of the Arbitration Proceedings." *Id*.

Specifically, Harlan Farms takes issue with the fact that the Guidelines state: "[Y]our first obligation is to enforce the agreement made by the parties . . . . As an arbitrator, therefore, it is your duty to: first, interpret the contract; second, apply the NGFA Trade Rules; and third, apply trade custom if appropriate."  Docket No. 21 Ex. 3 at 1.  According to Harlan Farms, these instructions precluded the arbitrators from considering its fraud in the inducement claim, which, by its very nature, is not found in the parties' Contract.

The Plaintiff's interpretation of the Guidelines overstates the import and effect of this document.  The Guidelines merely explain to the arbitrators that they are to enforce the agreement between the parties, regardless of what they believe about its fairness.  In so doing, the arbitrators are to look first to the agreement between the parties.  If necessary, the arbitrators then look to the NGFA Grain Trade Rules.  Finally, if neither the dealings of the parties nor the NGFA Grain Trade Rules address the issue, the arbitrators are told to look to trade custom or trade practice.  These instructions square with the common law rules of contract interpretation.  Moreover, they are consistent with NGFA Arbitration Rules, which were incorporated into the parties' Contract.  Accordingly, to the extent that Harlan Farms seeks to vacate the arbitrators'

award based on the fact that the arbitrators allegedly exceeded their powers, *see* 9 U.S.C. § 10(a)(4), their argument is not persuasive.

### C. Evident partiality.

Harlan Farms next claims that the arbitrators' decision should be vacated for evident partiality. It cites eight examples of the arbitrators' evident partiality: (1) the arbitrators' use of the Guidelines impermissibly narrowed the scope of the parties' Contract; (2) the arbitrators failed to make any determination on Harlan Farms' fraud claims; (3) "[a]n employee of Cargill sits on the NGFA Arbitration Committee," Docket No. 39 at 20; (4) [a]n employee of Cargill has served previously as the NGFA Arbitration Secretary," *id.*; (5) "NGFA Arbitration Committee members and arbitrators are employees of companies that engage in buying grain from farmers," *id*.; (6) the NGFA precludes individual farmers from serving as arbitrators; (7) "the NGFA Arbitration process consistently and overwhelmingly enters decisions in favor of grain buyers," *id.*; and (8) the arbitrators were biased against Harlan Farms.

Harlan Farms' first two examples of partiality (use of the Guidelines and failure to address the fraud claims) are merely a re-packaging of Harlan Farms' other arguments. Having previously addressed these arguments in-depth, the Court will not revisit them here other than to note that they do not establish direct or definite bias, and thus, do not exhibit evident partiality.

Arguments three through seven could be interpreted as alleging either structural bias or actual bias. As to structural bias, the Seventh Circuit considered, and rejected, a similar argument in *Harter v. Iowa Grain Co.*, 220 F.3d 544 (7th Cir. 2000). The plaintiff in *Harter* claimed that "the NGFA [was] 'structurally biased' against farmers because its members include grain elevators." *Id*. at 554. According to the plaintiff, "he was 'placed in the unenviable

8

position of having to attempt to persuade NGFA members that a widespread practice of the association's membership [was] illegal.'" *Id*. The Seventh Circuit observed that "Harter no doubt feels that the farmers' traditional adversaries were sitting in judgment over him." *Id*. The Seventh Circuit nonetheless ultimately rejected the plaintiff's argument, noting that courts "have required arbitrators to provide a 'fundamentally fair hearing'" and fairness is guaranteed by "steering clear of 'evident partiality.'" *Id*. at 555. The Seventh Circuit noted that it had never found evident partiality "in settings where arbitrators and litigants were structural adversaries" because "disqualifying arbiters with experience in the business would eviscerate the goals of arbitration." *Id*. The court also noted that "by virtue of their expertise in a field, arbitrators may have interests that overlap with the matter they are considering as arbitrators" and "[s]uch overlap has not amounted to prima facie partiality." *Id*. (citations omitted). "Thus, even a prior business association between an arbitrator and a party is not sufficient evidence of bias to vacate an award." *Id*. Moreover, the court thought it would be difficult for courts to apply the "structural bias" standard because it "would require disqualification, despite the practical reality that the arbitrators themselves would quite likely be impartial." *Id.* Therefore, the court ultimately rejected the structural bias argument.

Although Harlan Farms claims that this case is significantly different from *Harter*, it has not identified anything that justifies a departure from Seventh Circuit precedent. The *Harter* court expressly rejected concerns about structural bias when there was a prior business association between an arbitrator and a party. Harlan Farms' concerns – that Cargill employees sit on the NGFA Arbitration Committee and have previously served as the NGFA Arbitration Secretary – are even less egregious. Moreover, the *Harter* court rejected allegations about the

9

NGFA's composition. The only other arguments that Harlan Farms makes are that the NGFA precludes individual farmers from serving as arbitrators and that the NGFA Arbitration process consistently enters decisions in favor of grain buyers. Neither of these claims are sufficient to establish direct or definite bias.

To the extent that Harlan Farms' claims are that the NGFA arbitrators exhibited direct bias, *Harter* is again instructive. The direct bias standard is difficult to meet. In *Harter*, the court noted that the defendant's membership in the NGFA, the fact that the NGFA is an association of grain merchandisers and their affiliates, and the fact that one of the defendant's "top employees" sat on the NGFA Board, did not establish direct bias. *See id.* at 556. Nor was the fact that "the NGFA arbitrated fewer than 20 cases involving farmers, and only vindicated farmers twice" deemed persuasive. *Id.* The court noted:

> Under NGFA arbitration rules, an aggrieved party must first file a complaint with the NGFA national secretary. The parties then fully brief the dispute, and either party may request oral argument, though the requesting party bears the cost. The NGFA national secretary then appoints a three-member arbitration committee selected from the membership. The individual arbitrators must have expertise in the industry sector at issue, but must be commercially disinterested in the particular dispute. Arbitrators must disclose any bias or financial interest that could influence their analysis; either party may object to either of the arbitrators. The panel issues written opinions, and the parties may appeal.

*Id*. at 557. According to the court, "[t]hese facts suggest significant procedural safeguards for the parties." *Id*.

Like the plaintiff in *Harter*, Harlan Farms has alleged that one of the Defendant's employees sits on the NGFA Arbitration Committee, one of the Defendant's employees has previously served as the NGFA Arbitration Secretary, the NGFA is composed of grain buyers like Cargill, and the NGFA Arbitration process consistently and overwhelmingly enters

10

decisions in favor of grain buyers. These fact did not justify a finding of direct bias in *Harter* and the Plaintiff here has not presented anything indicating that this is a different case. Moreover, the additional fact adduced by Harlan Farms – that the NGFA precludes individual farmers from serving as arbitrators – is not enough to establish the direct, definite, bias necessary to show evident partiality. In short, Harlan Farms has not established that this case is any different from *Harter*; accordingly, it has failed to escape the (albeit it harsh) result of *Harter*.

As to Harlan Farms' eighth argument (the arbitrators were biased), as the Court explained above, Harlan Farms has not introduced anything indicating direct, definite bias on the part of the arbitrators. Accordingly, this argument, like the rest of those related to 9 U.S.C. § 10(a)(2), is not persuasive.

### D. Manifest disregard of the law.

Harlan Farms alleges that the arbitrators' failure to "determine Harlan's claims for Fraud and Fraudulent Inducement" and their disregard of "the legal principles incorporated into the Contracts and the law of fraudulent inducement . . . are sufficient to establish a claim to vacate the Arbitration Decision for manifest disregard of the law." Docket No. 39 at 23.

In *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001), the Seventh Circuit addressed the meaning of "manifest disregard of the law." The court stated: "If 'manifest disregard' means only a legal error . . . then arbitration cannot be final" as "[e]very arbitration could be followed by a suit, seeking review of legal errors, serving the same function as an appeal within a unitary judicial system." *Id*. at 579. "If 'manifest disregard' means not just any legal error but rather a 'clear' error (one about which there is . . . 'no reasonable debate'), again arbitration could not be final, and the post-arbitration litigation would be even more complex."

11

*Id*. According to the Seventh Circuit "[t]here is . . . a way to understand 'manifest disregard of the law' that preserves the established relation between the court and arbitrator and resolves the tension in the competing lines of cases. It is this: an arbitrator may not direct the parties to violate the law." *Id*. at 580. Thus, "the judiciary may step in when the arbitrator has commanded the parties to violate legal norms (principally, but not exclusively, those in positive law) but that judges may not deprive arbitrators of authority to reach compromise outcomes that legal norms leave within the discretion of the parties to the arbitration agreement." *Id*. "[T]he 'manifest disregard' principle is limited to two possibilities: an arbitral order requiring the parties to violate the law (as by employing unlicensed truck drivers), and an arbitral order that does not adhere to the legal principles specified by contract, and hence unenforceable under § 10(a)(4)." *Id.* at 581.

In this case, the Court has already concluded that the arbitrators did not exceed their powers as provided in 9 U.S.C. § 10(a)(4), therefore, the only question is whether the arbitrators instructed the parties to violate the law. Harlan Farms, instead of arguing this point, claims that this Court should not follow the *George Watts* holding because this decision somehow rejected the Supreme Court's definition of manifest disregard of the law set forth in *Wilko v. Swan*, 346 U.S. 426 (1953). The Court does not read *George Watts* as altering or departing from *Wilko*, nor does the Plaintiff provide any persuasive reason for this Court to depart from the binding holding of *George Watts*. Accordingly, because there is no allegation (and in fact no support for the claim) that the arbitrators' decision instructed the parties to violate the law, the Plaintiff's argument that the award should be vacated for manifest disregard of the law fails.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Confirm Arbitration is **DENIED** (Docket No. 28). The Plaintiff's Motion to Vacate the Arbitration Award (Docket No. 38) is **GRANTED IN PART AND DENIED IN PART**.[5] This case is remanded to the arbitrators for either clarification of their decision regarding Harlan Farms' fraud claim or resolution of that claim in the first instance if, in fact, it was not considered in arriving at the original decision.

SO ORDERED: 04/21/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Eric N. Allen
Allen Wellman McNew
ena@awmlaw.com

Jay Floyd Brubaker
Allen Wellman McNew
jfb@awmlaw.com

Mary Nold Larimore
Ice Miller LLP
larimore@icemiller.com

Edward Price Steegmann
Ice Miller LLP
ed.steegmann@icemiller.com

---

[5] In light of these rulings, the Defendant's Motion to Dismiss (Docket No. 26) and the Plaintiff's Motion to Amend (Docket No. 37) are **DENIED AS MOOT**.