# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| W & J HARLAN FARMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:09-cv-113-WTL-TAB |
| | ) |
| CARGILL, INC., | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON MOTION TO CONFIRM ARBITRATION AWARD

This cause is before the Court on the Defendant's Renewed Motion to Confirm Arbitration Award (Docket No. 48). The motion is fully briefed, and the Court, being duly advised, now rules as follows.

## I. BACKGROUND

Sometime before March 1, 2006, Cargill Inc. ("Cargill") began advertising its "On-Farm Storage" Program (the "Program") to Harlan Farms, Inc. ("Harlan Farms"). Cargill's advertisements stated that the Program provided the "chance to obtain a GSI grain storage system at significantly reduced cost." Cargill also promised "flexibility on delivery times." *Id*. Ultimately, the owners of Harlan Farms – Vernon K. Harlan and Dennis R. Harlan – met with Cargill to discuss the Program.

Cargill explained that in order to participate in the Program, Harlan Farms had to enter into an agreement to sell Cargill a specific amount of corn at set prices for three years, beginning in 2007 and ending in 2009. Cargill told Harlan Farms that if they agreed to the terms of the contract then Cargill would deliver the grain storage system at no charge.

Ultimately, Harlan Farms and Cargill entered into a "Cargill AgHorizons On-Farm

Storage" Contract (the "Contract") on March 1, 2006. The Contract required Harlan Farms to deliver 45,000 bushels of corn to Cargill at $2.55 per bushel in 2007, 2008, and 2009. Harlan Farms satisfied its obligations to Cargill in 2007 and 2008 by making the required deliveries. However, in May and June of 2008, floods destroyed 2400 acres of Harlan Farms' corn. Harlan Farms informed Cargill of its flood-related losses and asked to postpone the 2009 delivery until 2010.

Cargill informed Harlan Farms that it charged a $1 per bushel carrying charge to carry the Contract over to 2010.[1] Harlan Farms was quite upset to learn about this policy, as it was contrary to its expectations and beliefs. Cargill attempted to secure a commitment from Harlan Farms to either deliver the grain in 2009 or pay the carrying charge.

On June 18, 2008, Cargill sent Harlan Farms a letter stating that, based on Harlan Farms' representations, Cargill was canceling the Contract as of the close of the grain market on June 18, 2008. Cargill demanded that Harlan Farms pay $238,050 in damages.

Harlan Farms responded by filing suit in this Court on February 3, 2009. Meanwhile, Cargill initiated arbitration through the National Grain and Feed Association (the "NGFA"). Cargill then moved to stay the proceedings in this Court, pending arbitration. On September 29, 2009, the Court granted Cargill's motion to stay and referred all of the parties' claims to arbitration.

The NGFA issued its decision on June 2, 2010. The arbitrators found in favor of Cargill

---

[1] Harlan Farms was unaware of the carrying charge provision. In fact, Harlan Farms believed that Cargill's policy was that in the event of an "'act of God,' which resulted in a crop failure," Cargill would "allow the farmer to roll the contract over into the next year, without additional charge or penalty." Amend. Compl. ¶ 9.

and against Harlan Farms in all respects and awarded Cargill $238,050 in damages, plus interest. On August 19, 2010, Harlan Farms filed an Amended Complaint, which Cargill moved to dismiss. At the same time, Cargill moved to confirm the arbitration award. (Docket Nos. 26 & 28.) Harlan Farms filed a cross-motion to vacate the arbitration award. (Docket No. 38.)

On April 21, 2011, this Court denied the Defendant's Motion to Confirm Arbitration, and granted in part and denied in part the Plaintiff's Motion to Vacate Arbitration Award. (Docket No. 45). Finding the arbitrators' decision unclear as to whether they considered the merits of Harlan Farms' fraud and fraudulent inducement claims, the Court remanded the case to the arbitrators for clarification of their decision regarding the fraud claim or resolution of the claim in the first instance if, in fact, it was not considered in arriving at the original decision.[2]

On October 7, 2011, the NGFA arbitration panel issued its "Supplemental Decision" expressly rejecting Harlan's claims for fraud and fraudulent inducement. The panel stated, in pertinent part:

> The fraud claim was clearly presented to us by Harlan Farms in its written arguments that were submitted in this case. Harlan Farms' answer to the complaint, first argument in support of its counterclaim, and its surrebuttal argument were well written and organized making it simple for this committee to follow the positions and facts stated by Harlan Farms, including the alleged "act of God" discussions and the grounds for Harlan Farms' fraud-based claims.
>
> This committee closely and carefully considered each of the arguments and claims raised by both parties in their filings in this case. In particular, this committee considered Harlan Farms' argument that by reason of alleged fraudulent misrepresentations by Cargill that Harlan Farms was wrongfully induced into entering into the contract. The arbitrators noted, for example, that Harlan Farms stated that it was told by Cargill of an "act of God" clause that would excuse non-delivery of one year's production in the event of a natural

---

[2]In light of these findings, the Court denied as moot the Defendant's Motion to Dismiss (Docket No. 26) and the Plaintiff's Motion to Amend (Docket No. 37).

disaster.

> Our review of the facts and circumstances in this case focused upon the specific contract at issue and the alleged surrounding statements, discussions and other communications in question. We determined that the contract in dispute in this case (#24854) was highly detailed and specific with respect to both the buyer's and seller's rights and obligations. The contract was signed by both parties. This was not disputed by either party.
>
> We concluded that Harlan Farms' claims regarding allegedly fraudulent statements by Cargill were not sufficiently corroborated or credible to invalidate the detailed, written contract that had been signed by the parties. In our original decision, we referred to the positions and defenses taken by Harlan Farms that relied upon many terms or conditions not incorporated in the original contract. This included Harlan Farms' claim of fraud and the alleged discussions of "an act of God" clause that would supposedly excuse non-delivery of one year's production. The arbitrators were not persuaded by these claims in the balance of the clearly written terms of the signed contract.

The Defendants have now filed a Renewed Motion to Confirm Arbitration Award (Docket No. 48), which the Plaintiff opposes. (Docket No. 52).

## II. **LEGAL STANDARD**

Section 10 of the Federal Arbitration Act permits a court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition to the four reasons set forth in 9 U.S.C. § 10, a court may also "set aside arbitration awards that are in 'manifest disregard of the law.'" *Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 268 (7th Cir. 2006). However, the Seventh Circuit has "defined 'manifest disregard of

the law' so narrowly that it fits comfortably under the first clause of the fourth statutory ground – 'where arbitrators exceeded their powers.'" *Id.* (citations omitted). Indeed, the Seventh Circuit has consistently "confined [manifest disregard of the law] to cases in which arbitrators 'direct the parties to violate the law.'" *Id*. at 269 (quoting *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001)).

The Seventh Circuit has also cautioned that "[i]t is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not." *Wise*, 450 F.3d at 269.

> When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that one of the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc. – conduct to which the parties did not consent when they included an arbitration clause in their contract.

*Id*. Accordingly, "the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all." *Id*.; *see also Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987) (stating that "the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract").

### III. DISCUSSION

Cargill claims that none of the grounds for vacating an arbitrator's decision apply. Thus,

it argues, the arbitration decision should be confirmed. In contrast, Harlan Farms claims that the arbitration award should be vacated either pursuant to 9 U.S.C. § 10 or for manifest disregard of the law.

## A. Evident Partiality

Harlan Farms first attempts to resurrect a challenge it lodged against the arbitrators' decision when the Court first considered Cargill's Motion to Confirm Arbitration Award, an argument that the Court has already rejected.

Harlan Farms argued on the first go-round of this case that partiality is evident in the NGFA arbitration process because, according to its interpretation of relevant statistics, the NGFA "consistently and overwhelmingly enters decisions in favor of grain buyers." In its response to the instant motion, it again argues that "there is a direct and definite bias on the part of NFGA Arbitrators, based on the history of decisions rendered by NGFA Arbitrators," and this time offers different statistics, citing for support to an exhibit analyzing the decision rates of NGFA decisions. The Court considers this argument a motion to reconsider the Court's ruling that the NGFA is not evidently partial, as demonstrated by its historical decision rates in favor of grain buyers.

The circumstances in this case weigh strongly against reconsideration of this issue. The Court has already considered and rejected Harlan Farms' argument that the NFGA arbitrators are biased against grain farmers based on statistical analysis. Granted, Harlan Farms this time presents different statistics, but Harlan Farms has offered no reason why this evidence was not available to it the first time, nor why the Court should depart from the sound policy of finality of decisions and consider this evidence now. Allowing a losing party to tweak its argument based

on the Court's rejection of its argument the first time undermines the finality of this Court's decisions and subjects opposing parties to endless re-litigation. This the Court will not do.

### B. Exceeding Scope of Authority

Harlan Farms next contends that the arbitrators have exceeded their authority by issuing a supplemental decision when the "NFGA Arbitration Rules [do not] grant the Arbitrators the power to issue any form of Supplemental Decision." As Cargill correctly points out, the arbitrators issued their Supplemental Decision in accordance with this Court's remand instructions.

The Court considers this argument Harlan Farms' request for reconsideration of its earlier order remanding the case to the arbitrators for clarification. The Court declines to reconsider its earlier order.

### B. Manifest Disregard of the Law

Finally, Harlan Farms alleges that the arbitrators' Supplemental Decision is in manifest disregard of the law because it resolves Harlan's claim of fraudulent inducement on the basis of the *force majeure* clause in the contract instead of analyzing Harlan's claim according to the elements of fraudulent inducement.

In addition to the grounds for vacation of an arbitration award under the FAA, a court may also vacate an arbitration award that is entered in manifest disregard of the law. *Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 660 F.3d 281, 285 (7th Cir. 2011) ("Except to the extent recognized in *George Watts & Son*, 'manifest disregard of the law' is not a ground on which a court may reject an arbitrator's award under the [FAA]."). According to the Seventh Circuit, a court may reject an arbitrator's award as a manifest disregard of the law "when the

7

arbitrator has commanded the parties to violate legal norms (principally, but not exclusively, those in positive law) but . . . judges may not deprive arbitrators of authority to reach compromise outcomes that legal norms leave within the discretion of the parties to the arbitration agreement." *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001). "[T]he 'manifest disregard' principle is limited to two possibilities: an arbitral order requiring the parties to violate the law (as by employing unlicensed truck drivers), and an arbitral order that does not adhere to the legal principles specified by contract, and hence unenforceable under § 10(a)(4)." *Id.* at 581.

Acknowledging the Seventh Circuit's narrow reading of "manifest disregard of the law," Harlan Farms argues that the Court should apply the Ninth and Tenth Circuit's interpretation of "manifest disregard of the law," which is applicable when the record shows that the arbitrator "knew the law and explicitly disregarded it." *DMA Intern. Inc. v. Qwest Comm. Intern., Inc.*, 585 F.3d 1341, 1351 (10th Cir. 2009); *see also Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (explaining that moving party must show that arbitrator understood and correctly stated law, but proceeded to disregard it). According to Harlan Farms, this result is warranted because "the Seventh Circuit's rule prioritizes the alleged arbitration benefits of a quicker and cheaper final resolution to the exclusion of ensuring that the resolution complies with the law." Even if this were true, this Court is bound by Seventh Circuit precedent. Because Harlan Farms has not argued that the arbitrators' Supplemental Decision directs the parties to violate the law, and the Court has declined to reconsider its earlier order as exceeding the scope of the arbitrators' authority, the Court is not persuaded that the arbitrators' decision is unenforceable by reason of manifest disregard of the law.

8

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Renewed Motion to Confirm Arbitration Award is **GRANTED** (Docket No. 48).

SO ORDERED: 03/06/2012

*William T. Lawrence*
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.